THE ISAAC MAY.

*(District Court, N. D. New York. April 24, 1891.*

1. SALVAGE—AMOUNT.

Where a steel propeller, which is thoroughly equipped with all the modern appliances for extinguishing fires, saves in the day-time, and with little danger to herself or crew, a barge worth about $4,000, after about five hours' labor, and then tows the barge into port, without deviating from her course, an allowance of $1,000 for salvage is sufficient.

2. SAME—APPORTIONMENT.

In such case the salvage will be divided as follows: To the owners, $325; to the master, $90; to the first mate, $50; to the chief engineer, who took an active part in the work, $50; to the second mate, $40; to the second engineer, $25; and the balance, of $420, equally among the rest of the crew, their services being nearly equal.

In Admiralty.
*George J. Sicard,* for Lehigh Valley Transportation Company and James W. Todd, libelants.
*Josiah Cook,* for Thomas Wynne, David Gibbs, and others, libelants.
*Benjamin H. Williams,* for claimant.

COXE, J. At about half-past 4 on the morning of July 16, 1890, the steel propeller Saranac, owned by the libelant, the Lehigh Valley Transportation Company, discovered the steam lumber barge Isaac May on fire, at a point on Lake Erie about 100 miles W. S. W. from Buffalo. The May was wrapped in flames. Her crew had abandoned her, and she would have burned to the water's edge but for the assistance of the Saranac. The latter was admirably equipped for such work, being provided with all the modern appliances, and, after about five hours' labor, her master and crew succeeded in extinguishing the flames. The Saranac was bound for Buffalo, and towed the May to that city. On the following day a libel for salvage was filed by the owners of the Saranac. Subsequently two libels and a petition were filed on behalf of several members of the crew of the Saranac. The libels have been consolidated and tried in one action.

The testimony as to value is conflicting, but the impression left upon my mind, after taking everything into consideration, is that the property saved was worth about the sum of $4,000. In view of the fact that the salvage service, though promptly and gallantly rendered, took place in the day-time, with very little danger to the Saranac or her crew, and that in towing the wreck to Buffalo she was not required to deviate from her course, it is thought $1,000 will be a liberal allowance for the entire service.

It seems to be expected that the court will apportion this sum among the libelants upon the testimony already taken, without further proceedings before a commissioner. In my opinion the sum awarded should be divided as follows: To the owners, $325; to the master, $90; to the first mate, $50; to the chief engineer, who took an active part in extinguishing the flames, $50; to the second mate, $40; and to the second engineer, $25. As all of the crew participated in the salvage, and as their services were equally meritorious, or nearly so, the remaining sum of $420 should be evenly divided among them. The proof submitted does not warrant the court in discriminating in favor of a portion of the crew as against the rest, although it is apparent that some, at times, occupied positions of greater hazard than others.

It is thought that there is insufficient warrant for the assertion that the libelants should be deprived of costs, because the libels were prematurely or improperly filed. The libels filed by the seamen, however, should entitle them to but one bill of costs. There should be a decree for the libelants as above stated.